UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**REPORT AND RECOMMENDATION**

| | |
|---|---|
| Darin D. Davidson, | |
| Plaintiff, | Case No. 11-cv-3733 (NEB/DJF) |
| v. | |
| Governor Mark Dayton, et al., | |
| Defendants. | |
| Joseph Allen Hajek, | |
| Plaintiff, | Case No. 12-cv-343 (NEB/DJF) |
| v. | |
| Governor Mark Dayton, et al., | |
| Defendants. | |
| Karl Godfrey Stevens, | |
| Plaintiff, | Case No. 12-cv-495 (NEB/DJF) |
| v. | |
| Governor Mark Dayton, et al., | |
| Defendants. | |
| Dale Allen Williams, Sr. | |
| Plaintiff, | Case No. 12-cv-881 (NEB/DJF) |
| v. | |
| Governor Mark Dayton, et al., | |
| Defendants. | |

## INTRODUCTION

Over a decade ago, each Plaintiff in the above-entitled matters filed a largely similar lawsuit challenging the legality of conditions at the Minnesota Sex Offender Program ("MSOP"). The Court stayed each lawsuit during the pendency of a related class action lawsuit, *Karsjens v. Minnesota Department of Human Services*, No. 11-cv-3659 (DWF/TNL) ("*Karsjens*"). After final judgment was entered in *Karsjens*, the Court lifted the stay, reviewed each of the lawsuits under 28 U.S.C. § 1915(e)(2)(B)(ii), dismissed the majority of each Plaintiff's claims, and allowed a small subset of claims to go forward.[1]

Defendants subsequently filed the same Motion to Dismiss in each of these four lawsuits.[2] *See Davidson v. Dayton et al.*, No. 11-cv-3733 (NEB/DJF) ("*Davidson*") (ECF No. 27); *Hajek v. Dayton et al.*, No. 12-cv-343 (NEB/DJF) ("*Hajek*") (ECF No. 30); *Stevens v. Dayton et al.*, No. 12-cv-495 (NEB/DJF) ("*Stevens*") (ECF No. 28); *Williams v. Dayton et al.*, 12-cv-881 (NEB/DJF) ("*Williams*") (ECF No. 31). Plaintiff Dale Allen Williams, Sr. filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss. *Williams*, 12-cv-881 (NEB/DJF) (ECF No. 39). The other Plaintiffs did not file responsive memoranda. The Motions to Dismiss are now before

---

[1] The four lawsuits currently before Court are part of a larger group of eight lawsuits stayed during the pendency of *Karsjens* that were very similar: (1) each case was filed within months of each other; (2) each Plaintiff raised precisely the same twenty-one causes of action challenging the legality of conditions at the MSOP; and (3) the complaint used to commence each lawsuit is largely identical to the other complaints. Because of the similarities, the Court issued a single Order and Report and Recommendation that addressed all eight cases after completing its review under section 1915(e)(2)(B)(ii). *See White v. Dayton, et al.*, Civ. Nos. 11-3702 (NEB/DJF), 11-3714 (NEB/DJF), 11-3733 (NEB/DJF), 12-0062 (NEB/DJF), 12-0343 (NEB/DJF), 12-0344 (NEB/DJF), 12-0495 (NEB/DJF), 12-0881 (NEB/DJF), 2023 WL 21918, at *1 (D. Minn. Jan. 3, 2023), *report and recomm. adopted*, Civ. No. 11-3702, 2023 WL 1797830 (D. Minn. Feb. 7, 2023). The District Judge subsequently adopted the Report and Recommendation. *See id.*

[2] The undersigned considers Defendants' Motions to Dismiss pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1.

the Court for report and recommendation to the District Judge. Because of the similarities between the lawsuits and the pleadings currently at issue, the Court addresses each lawsuit in a single Order and Report and Recommendation.

## BACKGROUND

### I. Plaintiffs' Complaints

Plaintiffs Davidson, Hajek, Stevens and Williams (collectively "Plaintiffs") are each involuntarily committed to the MSOP pursuant to Minnesota Statutes Chapter 253B, the Minnesota Commitment and Treatment Act (the "MCTA"). Each Plaintiff's complaint sues largely the same defendants, who include: (1) former Governor of Minnesota, Mark Dayton; (2) former Minnesota Attorney General, Lori Swanson; and (3) current and former directors, employees, and/or agents of the Minnesota Department of Human Serves ("DHS"). (ECF No. 1 ¶¶ 13-53).[3] Only official capacity claims remain against these defendants. (*See* ECF Nos. 22, 29.)

The gravamen of the Plaintiffs' complaints is that the conditions of their civil commitments violate the Constitution: "[t]he policies controlling the conditions of confinement [at the MSOP] are nearly identical to those for criminals serving their sentences" and that Defendants have denied Plaintiffs access to proper care and adequate treatment. (ECF No. 1 at 2.) Plaintiffs also raise allegations against multiple named and unnamed MSOP "policies and procedures" that they claim are a "restraint" on their "liberty." (*Id.* at 3.)

Many of the allegations in the Plaintiffs' complaints are not specific to the Plaintiffs' personal experiences at the MSOP. For example, while Plaintiffs allege various policies

---

[3] For ease of reference the Court will generally discuss the cases as though they constituted a single lawsuit and will cite just the docket entries filed in *Williams* throughout this Order and Report and Recommendation. Only when it is necessary to distinguish among the three cases will the Court discuss the cases separately, though the Court has reviewed each of the pleadings individually.

3

"humiliate," "harass," and "dehumanize" them, Plaintiffs do not allege any specific incidents in which the policies were applied to them to support their broad allegations. (*See, e.g.*, *id.* ¶¶ 100, 102, 113 (challenging policies related to double bunking, cell size and privacy, and visitation policies, respectively).)

Plaintiffs initially raised twenty-one causes of action ("COAs"). (*Id.* ¶¶ 145-207.) Following the Court's review under 28 U.S.C. § 1915(e)(2)(B)(ii), only the following five COAs remain:

> **Second COA**—Unreasonable Restrictions on Free Speech (*Id.* ¶¶ 148-50);
>
> **Third COA**—Unreasonable Searches and Seizures[4] (*Id.* ¶¶ 151-53);
>
> **Ninth COA**—Cruel and Unusual Punishment (*Id.* ¶¶ 169-71);
>
> **Eleventh COA**- Denial of Procedural Due Process; (*Id.* ¶¶ 175-77); and
>
> **Seventeenth COA**—Violates the Totality of the Conditions (alleging the totality of the conditions violates the Fourteenth Amendment) (*Id.* ¶¶ 193-95).

Each of these remaining COAs arises under 42 U.S.C. § 1983 and is based on alleged violations of Plaintiffs' rights under the United States Constitution and, in some instances, the Minnesota Constitution.

In addition to listing causes of action, Plaintiffs divide their complaints' factual allegations with headings. (*See, e.g.*, *id.* ¶¶ 60-69 ("Treatment"); 70-74 ("Punishment"); 75-78 ("Restriction and Isolation"); 79-83 ("Unit Lockdowns").) None of Plaintiffs' five remaining COAs identifies any factual allegations specific to that COA; rather, each refers to allegations in preceding

---

[4] On preliminary review, the Court dismissed two of the three subparts to Plaintiffs' unreasonable search and seizure claims, leaving only the claim that MSOP policies regarding the seizure of personal property may violate the Fourth Amendment. (*See* ECF Nos. 22 at 21-24; ECF No. 29.)

paragraphs. (*See, e.g.*, *id.* ¶ 145 ("Plaintiff incorporates by references and re-alleges paragraphs 1 through 144 of this complaint.").)

## II.   The *Karsjens* Litigation

In *Karsjens*, a class of plaintiffs consisting of all clients who were then committed at the MSOP, including Plaintiffs Davidson, Hajek, Stevens, and Williams, and who were represented by counsel, pursued numerous claims regarding the lawfulness of conditions at the MSOP. *See Karsjens* (ECF Nos. 203, 635). *Karsjens* was litigated for more than a decade and consisted of three appeals, with the third appeal still pending. *See Karsjens v. Piper*, 845 F.3d 394, 409 (8th Cir. 2017) ("*Karsjens I*"); *Karsjens v. Lourey*, 988 F.3d 1047, 1051 (8th Cir. 2021) ("*Karsjens II*"); *see also Karsjens* (ECF Nos. 1, 1036, 1118, 1200).

The operative complaint in *Karsjens*, filed October 14, 2014, asserted the following thirteen claims: (I) Minnesota Statute § 253D is facially unconstitutional; (II) Minnesota Statute § 253D is unconstitutional as applied; (III) Defendants have failed to provide treatment in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (IV) Defendants have failed to provide treatment in violation of the MCTA; (V) Defendants have denied Plaintiffs the right to be free from punishment in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (VI) Defendants have denied Plaintiffs the right to less restrictive alternative confinement in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (VII) Defendants have denied Plaintiffs the right to be free from inhumane treatment in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (VIII) Defendants have denied Plaintiffs the right to religion and religious freedom in violation of the First and Fourteenth Amendments to the United States Constitution; (IX) Defendants have unreasonably

restricted free speech and free association in violation of the First Amendment to the United States Constitution and the Minnesota Constitution; (X) Defendants have conducted unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution and the Minnesota Constitution; (XI) Defendants have violated court ordered treatment; (XII) individual Defendants have breached Plaintiffs' contractual rights; and (XIII) individual Defendants have tortiously interfered with contractual rights and have intentionally violated Minn. Stat. § 253B.03, subd. 7. *Karsjens*, Third. Am. Compl. (ECF No. 635) ("*Karsjens* TAC") ¶¶ 226- 352.

Central to the class claims in *Karsjens* were the plaintiffs' allegations that the defendants in that matter—consisting of the Commissioner of DHS and various MSOP employees (in their official capacities) including current Defendants Jesson, Carlson, Moser, Benson, and Lundquist—imposed policies and procedures that resulted in unconstitutional and illegal conditions of confinement. *See Karsjens*, TAC ¶ 1. On the plaintiffs' motion, the court dismissed with prejudice Counts IV, XI, XII, and XII on April 10, 2015. *Karsjens* (ECF No. 1005). In the first *Karsjens* appeal, the Eighth Circuit entered judgment in the defendants' favor on Counts I and II. *Karsjens I* at 409. On remand in August 2018, the district court dismissed Counts III, V, VI, and VII, and granted summary judgment in favor of the defendants on the remaining claims, Counts VIII, IX, and X. *Karsjens v. Piper*, 336 F. Supp. 3d 974, 998 (D. Minn. August 23, 2018). In the second *Karsjens* appeal, the Eighth Circuit reversed the dismissal of Counts V, VI, and VII and remanded them for reconsideration under a different legal standard. *Karsjens II* at 1051. On remand in February 2022, the district court again dismissed with prejudice Counts V, VI, and VII. *Karsjens v. Harpstead*, Civ. No. 11-3659 (DWF/TNL), 2022 WL 542467, at *18 (D. Minn. Feb. 23, 2022), appeal docketed, Case No. 22-1459 (8th Cir. March 4, 2022). Among other things,

the court held that the conditions of confinement and the challenged MSOP policies and procedures were not unconstitutional or otherwise illegal. *Id.*

## DISCUSSION

**I.     Motions to Dismiss**

Defendants argue Plaintiffs' remaining COAs should be dismissed with prejudice because they were or could have been litigated in *Karsjens* and are barred under the doctrines of claim preclusion and issue preclusion. (ECF No. 33 at 9-18.) In the alternative, Defendants argue Plaintiffs' complaints should be dismissed for improper pleading or failure to state a claim. (*Id.* at 14-15 n.9, 18-22.) Plaintiff Williams argues issue preclusion does not apply because he seeks to raise as-applied challenges to specific MSOP policy applications (ECF No. 39 at 4-6). He further argues claim preclusion does not apply because there is not a final judgment on the merits, *Karsjens* was not resolved by a court of competent jurisdiction, privity does not exist among the named Defendants, and because his as-applied challenges are not precluded. (*Id.* at 6-13.) For the reasons given below, the Court finds Plaintiffs' claims are precluded under *Karsjens* and otherwise are not cognizable under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**A.     Legal Standard**

**1.     Standard of Review Under Rule 12(b)(6)**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

### 2. Pleading Requirements

Rule 8(a)(2) requires that a complaint include "a short plain statement of the claim showing the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a)(2) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court has held, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556. Although pro se complaints must be construed liberally, such complaints still must allege sufficient facts to state a claim as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

Rule 11(b) places additional requirements on pleadings filed both by "an attorney or unrepresented party." Fed. R. Civ. P. 11(b). Any party who files "a pleading, writing motion, or other paper … [with the Court] certifies that to the best of the person's knowledge, information,

and belief, formed after an inquiry reasonable under the circumstances … [that] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* at 11(b)(3).

Taken together, "[i]t is the plaintiffs' burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." *Gurman v. Metro Hous. Dev. Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011). For these reasons, "[t]his Court has repeatedly criticized the filing of 'kitchen-sink' or 'shotgun' complaints—complaints in which a plaintiff brings every conceivable claim against every conceivable defendant." *Id.* at 1153 (collecting cases). Such complaints shift "onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support." *Id.* Most problematic for plaintiffs filing 'kitchen-sink' complaints is that it becomes nearly impossible for the court to discern whether the plaintiff states a viable claim for relief because the allegations become "wreathed in a halo of frivolous and near-frivolous legal claims. The bad obscures the good." *Id.* at 1154.

### B. Claim Preclusion

The Court agrees with Defendants that Plaintiffs' claims are barred under the doctrine of claim preclusion.[5] The principles of claim preclusion are well-settled:

> [W]hen a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."

---

[5] Because the Court finds claim preclusion applies, it does not reach Defendants' argument regarding issue preclusion.

*Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948) (quoting *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876)). A court evaluating whether preclusion bars a party from asserting a claim must examine whether: (1) there has been a final judgment on the merits of a cause of action; (2) the court that issued the judgment was "of competent jurisdiction"; (3) the person seeking to preclude the claim was a party or a privy to a party in the first litigation; and (4) the claim sought to be precluded either was actually litigated or is a claim that "might have been offered" in the first litigation. *See id.* With respect to the first factor, it "is well established in the federal courts that 'the pendency of an appeal does not diminish the res judicata effect of a judgment rendered by a federal court.'" *Magee v. Hamline University*, 1 F. Supp. 3d 967, 975 n.5 (D. Minn. 2014) (quoting *Dickinson v. Ewing (In re Ewing)*, 852 F.2d 1057, 1060 (8th Cir. 1988)), *aff'd*, 775 F.3d 1057 (8th Cir. 2015).

The first three elements of claim preclusion are clearly satisfied here: (1) the court dismissed the claims raised in *Karsjens* with prejudice and on the merits, *see id.*; (2) the *Karsjens* court was of competent jurisdiction; and (3) the Defendants named in Plaintiffs' lawsuits in their official capacities are alleged to be agents of the same governmental entity as the defendants named in *Karsjens*. *See Jamison*, 11-cv-2136 (PAM/DTS), 2023 WL 2088302, at *2 (D. Minn. Feb. 17, 2023) (finding these elements satisfied under the same circumstances presented here); *Allan v. Jesson, et al.*, No. 11-cv-1611 (ADM/LIB), (ECF No. 58) (D. Minn. Mar. 27, 2023) (same), *report and recomm. adopted*, (ECF No. 67).

The Court also finds the fourth element is satisfied because Plaintiffs' remaining COAs were or could have been litigated in *Karsjens*. Specifically, Plaintiffs already raised and fully litigated the following claims in *Karsjens*:

- **Second COA**—Unreasonable Restrictions on Free Speech: Plaintiffs claim Defendants unreasonably restricted free speech in violation of the Constitution (ECF No. 1 ¶¶ 148-50). Plaintiffs raised an identical claim in *Karsjens*. *Karsjens* TAC ¶¶ 307-315 (Count IX) (Unreasonable Restriction of Free Speech and Free Association in Violation of the First Amendment to the United States Constitution and the Minnesota Constitution).

- **Third COA**—Unreasonable Seizures of Personal Property: Plaintiffs claim Defendants performed unreasonable searches and seizures in violation of the Fourth Amendment (ECF No. 1 ¶¶ 151-53). Plaintiffs raised the same claim in *Karsjens*. *Karsjens* TAC ¶¶ 316-325 (Count X) (Unreasonable Searches and Seizures in Violation of the Fourth Amendment to the United States Constitution and the Minnesota Constitution).

- **Ninth and Seventeenth COAs**—Cruel and Unusual Punishment and Totality of the Conditions: Plaintiffs claim Defendants subjected them to cruel and unusual punishment in violation of their Constitutional rights (ECF No. 1 ¶¶ 169-71), and further allege the "Totality of the Conditions" at the MSOP violates the constitutional prohibition against cruel and unusual punishment (ECF No. 1 ¶¶ 193-195).[6] These claims mirror claims Plaintiffs also raised in *Karsjens*. *Karsjens* TAC ¶¶ 269-283 (Count V) (Denial of Right to be Free from Punishment in Violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution); and ¶¶ 292-297 (Count VII) (Denial of Right

---

[6] Plaintiffs' Seventeenth COA alleges Defendants' conduct "ha[s] made plaintiff[s] currently suffer the totality of the conditions of the Fourteenth Amendment of the United States Constitution" and "Defendants are acting with intent to deny plaintiff[s] [their] constitutional rights." (ECF No. 1 ¶ 194). The Court liberally construes Plaintiffs' allegation to mean that the "totality of the conditions" at MSOP violates the Constitution's prohibition on cruel and unusual punishment in violation of the Eighth or Fourteenth Amendments. *See Holt v. Sarver*, 309 F. Supp. 362 (E.D. Ark. 1970), *aff'd and remanded*, 442 F.2d 304 (8th Cir. 1971) (finding the totality of conditions in certain units of a prison—including no windows, nonworking lights and toilets, and multiple stabbings—violated the Constitution's prohibition on cruel and unusual punishment).

11

to be Free from Inhumane Treatment in Violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution).

- **Eleventh COA**—Denial of Procedural Due Process in Violation of the Fourteenth Amendment: Plaintiffs claim Defendants violated their procedural due process rights in violation of the Constitution (ECF No. 1 ¶¶ 175-77). Plaintiffs similarly alleged in *Karsjens* that the MCTA and the conditions at MSOP violated their due process rights. *Karsjens* TAC ¶¶ 226-233 (Count I) (alleging the MCTA is unconstitutional on its face); and ¶¶ 234-253 (Count II) (alleging the MCTA is unconstitutional as applied).

Because Plaintiffs previously raised their remaining COAs in *Karsjens*, the *Karsjens* court had jurisdiction over the claims, Defendants either were defendants in *Karsjens* or are in privity with the *Karsjens* defendants, and there is a final judgment on the merits of those claims, Plaintiffs' remaining COAs are barred from further prosecution under the doctrine of claim preclusion. The Court accordingly recommends Plaintiffs' remaining COAs be dismissed with prejudice. *See, e.g.*, *Jamison*, 2023 WL 2088302, at *1-*2 (dismissing substantially identical claims as barred by claim preclusion).

The Court further finds that to the extent Plaintiffs' remaining allegations differ from those raised in *Karsjens* in any respect, they are likewise barred because "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action." *Plough v. W. Des Moines Comm. Sch. Dist.,* 70 F.3d 512, 514 (8th Cir. 1995) (citation omitted) (emphasis added). Claims that "arise [ ] out of the same nucleus of operative facts as the prior claim" are precluded. *Yankton Sioux Tribe v. U.S. Dep't of Health & Hum. Servs.*, 533 F.3d 634, 641 (8th Cir. 2008) (citation omitted). Here, all of Plaintiffs' remaining

allegations broadly relate to the conditions of confinement at the MSOP and arise out of the same nucleus of operative facts already covered in *Karsjens*.[7]

Mr. Williams argues claim preclusion does not apply because he seeks to raise as-applied challenges to MSOP policies, which were not addressed by *Karsjens* and therefore are not precluded. (*See* ECF No. 39 at 9-10.) In support of his position, he cites *Karsjen I*, which stated in a footnote that: "the Court's conclusions on the viability of Plaintiffs' freedom-of-speech and association claims in this case are not meant to foreclose committed individuals at the MSOP from advancing individual freedom-of-speech and association claims in separate litigation." 336 F. Supp. 3d at 994 n.13; *see also Bucklew v. Precythe*, 883 F.3d 1087, 1090 n.2 (8th Cir. 2018) (noting

---

[7] Plaintiffs' factual allegations track very closely to the factual allegations they asserted in *Karsjens*. *Compare* Basis for Confinement (ECF No. 1 ¶¶ 57-59) *with Karsjens TAC* ¶¶ 53-62; Treatment (ECF No. 1 ¶¶ 60-69; 96-99) *with Karsjens* TAC ¶¶ 68-79; Punishment and Restriction and Isolation (ECF No. 1 ¶¶ 70-78) *with Karsjens* TAC ¶¶ 123-140; Unit Lockdowns (ECF No. 1 ¶¶ 79-83) *with Karsjens* TAC ¶¶ 92, 138(m), 150, 163; Denial of Yard Time and Gym (ECF No. 1 ¶¶ 84-87) *with Karsjens* TAC ¶ 138(e-k); Excessively Restrictive Conditions/Conditions of Confinement (ECF No. 1 ¶¶ 100-109) *with Karsjens* TAC ¶¶ 141-205; Censorship, Delay, and Loss of Mail/Packages (ECF No. 1 ¶ 115) *with Karsjens* TAC ¶¶ 161 (a-b); Excessive Visitation Restrictions (ECF No. 1 ¶ 113) *with Karsjens* TAC ¶¶ 180-183; Unnecessary Restraints and Arbitrary Placements in Isolation Cells (ECF No. 1 ¶¶ 75-78, 81) *with Karsjens* TAC ¶ 161(d); Denial of Access to Law Library and Legal Mail (ECF No. 1 ¶¶ 90-92) *with Karsjens* TAC ¶¶ 138(d), 161(b); Body Strip Searches (ECF No. 1 ¶¶ 124-126) *with Karsjens* TAC ¶¶ 157-158; Room/Cell Searches (ECF No. 1 ¶¶ 119-120) *with Karsjens* TAC ¶¶ 155-162; Denial of or Inadequacy of Meals (ECF No. 1 ¶ 127) *with Karsjens* TAC ¶¶ 190- 194; Denial of Personal Property (ECF No. 1 ¶¶ 121-123, 127-131) *with Karsjens* TAC ¶¶ 173-179; Monitoring Telephone Calls (ECF No. 1 ¶¶ 110-112) *with Karsjens* TAC ¶ 161(f); Denial of Recreational Activities and Exercise/Use of Yards (ECF No. 1 ¶ 132) *with Karsjens* TAC ¶ 138 (e); Inadequate Medical Care (ECF No. 1 ¶¶ 93, 143) *with Karsjens* TAC ¶¶ 169- 172; Denial of Access to Store/Canteen (ECF No. 1 ¶¶ 116-118) *with Karsjens* TAC ¶¶ 146, 161(j); Denial of Educational/Employment Opportunities (ECF No. 1 ¶¶ 88-89, 133) *with Karsjens* TAC ¶¶ 184-189; Equal Protection/Denial of Less Restrictive Alternative (ECF No. 1 ¶¶ 127-131) *with Karsjens* TAC ¶¶ 284-291; Violations of the MCTA (ECF No. 1 ¶¶ 137-143) *with Karsjens* TAC ¶¶ 262-268; Negligent Hiring and Credentialing of MSOP Staff (ECF No. 1 ¶¶ 93-94) *with Karsjens* TAC ¶ 93; and Double Occupancy Rooms (ECF No. ¶ 100) *with Karsjens* TAC ¶¶ 152-154.

that the issue of whether an as-applied challenge is claim precluded following a dismissed facial challenge in a class-action is "complex", without reaching the question).

But even if it is possible for Mr. Williams to bring as-applied challenges that are not claim-precluded under *Karsjens*, neither Mr. Williams nor any of the other Plaintiffs in the actions before the Court raise any such challenges. Plaintiffs' factual allegations closely track the allegations in the *Karsjens* complaint, and none of the Plaintiffs raise specific allegations identifying how any MSOP policies and practices were unconstitutionally applied to them individually.[8] The Court accordingly need not reach the question of whether Plaintiffs raise as-applied challenges that are not precluded, because Plaintiffs have not adequately plead as-applied claims.

Finally, after reviewing Plaintiffs' 80+ page Complaints and attempting to link hundreds of factual allegations with Plaintiffs' vaguely-stated COAs, the Court further finds Plaintiffs fail to state a claim upon which relief can be granted. Even broadly construed, Plaintiffs' conclusory allegations simply do not meet *Iqbal*'s plausibility requirements. *Iqbal*, 556 U.S. at 678.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendants' Motions to Dismissed be **GRANTED**:

    a. *Davidson v. Dayton et al.*, Civ. No. 11-3733, (ECF No. [27]);

---

[8] *Bucklew* illustrates the sort of individually specific as-applied challenge that, unlike Plaintiffs' claims, might possibly avoid claim preclusion based on a prior facial challenge to a statute or policy. *Bucklew* followed a class-action (*Zink*), which raised a facial challenge to Missouri's method of execution and ultimately was dismissed. 883 F.3d at 1090 n.2. The plaintiff in *Bucklew* argued his specific medical condition rendered the method of execution unconstitutional as applied to him. *See id.* Here, in contrast, Plaintiffs' claims arise from substantially similar facts as those asserted in *Karsjens* during the same time-period as *Karsjens*, and Plaintiffs fail to identify any specific facts or circumstances challenging the manner in which MSOP policies have been applied to them in particular.

      b.      *Hajek v. Dayton et al.*, Civ. No. 12-343, (ECF No. [30]);

      c.      *Stevens v. Dayton et al.*, Civ. No. 12-495, (ECF No. [28]); and

      d.      *Williams v. Dayton et al.*, Civ. No. 12-881 (ECF No. [31]).

2.    The following matters be **DISMISSED WITH PREJUDICE**:

      a.      *Davidson v. Dayton et al.*, Civ. No. 11-3733;

      b.      *Hajek v. Dayton et al.*, Civ. No. 12-343;

      c.      *Stevens v. Dayton et al.*, Civ. No. 12-495; and

      d.      *Williams v. Dayton et al.*, Civ. No. 12-881.

Dated: June 12, 2023                                  *s/ Dulce J. Foster*
                                                                DULCE J. FOSTER
                                                                United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).